COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 DEBORAH MALONE WILSON,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                    
 Appellees. 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00042-CR
  
                          Appeal from
  
 355th District
 Court
  
 of Hood County,
 Texas
  
 (TC # CR11442)
 
 


O P I N I O N

 

Deborah
Malone Wilson is appealing her conviction of murder.  A jury found Appellant guilty and assessed her
punishment at imprisonment for ninety-nine years.  We affirm.

FACTUAL SUMMARY

 

Appellant
lived on property adjoining property owned by her eighty-two-year-old father,
George Malone, and her brothers, David Malone, and Danny Malone.  George’s attorney, Andrew Ottaway, had
represented George for approximately twenty years.  George owned property in the River Run
subdivision and he deeded portions of the property to his children, including
Appellant, David, and Danny.  Ottaway
prepared the deeds.  Ottaway
characterized Danny as the peacemaker in the family, but Danny had been
convicted of a felony DWI and incarcerated. 
When asked whether the Malones needed a peacemaker, Ottaway answered
affirmatively and said:  “They were a
scrappin’ bunch.”  When asked to explain
what he meant, Ottaway testified:  “They
were rough people, they drink a little too much, and it got sideways
sometimes.”  Ottaway saw the relationship
between George, David, and Appellant deteriorate after Danny became
incarcerated.  With Ottaway’s assistance,
Danny revoked a power of attorney he had given to Appellant and he instead gave
his father power of attorney.  This had
the effect of cutting off Appellant’s access to Danny’s finances.  Part of the family dispute also stemmed from
George’s threats to cut off the water to David’s and Appellant’s homes because
he was angry they were not paying him for their share of the water.  

During
the summer of 2009, George spoke to Ottaway about obtaining a family violence
protective order.  After filing the
application on August 10, 2009, Ottaway initially had difficulty getting a
hearing date, so he spoke with Appellant and David at his office in an effort
to resolve the situation.  David
indicated that he would sign an agreed mutual protective order but Appellant
was unhappy and did not want to sign anything without studying it first.  When David and Appellant did not sign the
agreed protective order, Ottaway increased his efforts to get a hearing date
because he saw the dispute “escalating.” 
A process server, Randy Jaquess, served the application on Appellant and
David on August 14, 2009.  The county
court at law set a hearing for October 7, 2009. 
In early September 2009, Yates Malone, one of Appellant’s brothers, had
a conversation with her.  Yates described
her as being irate about issues she had with their father.  Appellant knew that George had filed an
application for a protective order.  Appellant
told Yates that her father “just needed to die.”  

Tyler
Dempsey is a neighbor of George Malone and the other Malone family
members.  He frequently saw George
working around the property and in the vegetable garden.  Dempsey knew that Appellant had a “rocky”
relationship with her father as he had observed her cursing at George and
making obscene gestures.  On September
28, 2009, Dempsey and his mother were sitting on their porch when they saw two
people rolling around on the ground in the vegetable garden.  Appellant held George by the shoulders while
David kicked him in the head.  Dempsey
did not want to get involved at first, so he just watched.  But when he saw David Malone kick George in
the head like a person kicking a football, Dempsey ran over to the garden while
his mother called 911.  Even after George
went limp from the blow, Appellant held George and David kicked him in the head
a second time.  As Dempsey ran to the
garden, he saw some men who were installing a septic system and asked them for
help.  When Dempsey got to the garden, he
saw that Appellant and George were on the ground.  Appellant had her arms wrapped around
George’s legs and George was holding her by the hair with his arms outstretched
as though he was attempting to push her away from him.  Dempsey screamed at them to let go of each
other and they did.  Law enforcement
officers and emergency medical personnel arrived a short time later.  In addition to several head wounds, George
also had fresh bite marks on his back, arm, leg, and ear and gouging injuries
on his shoulder consistent with injuries caused by fingernails.  Mary Gerdes, a volunteer EMT, asked George
what had caused the injuries and he said that Appellant had bit and kicked
him.  Appellant and David were taken into
custody.  Appellant, who was covered in
George’s blood, repeatedly stated that she had beaten her father and she hoped
that he died.  Although George was
airlifted from the scene and received medical treatment, he died from traumatic
brain injury.  

A
grand jury returned a three-count indictment against Appellant charging her
with murder (Count I), serious bodily injury to an elderly person (Count II),
and bodily injury to an elderly person (Count III).  The State later dismissed Counts II and III
and tried the murder count to a jury.  The
jury charge included instructions on self-defense and the law of parties.  The jury rejected Appellant’s claim of self-defense
and convicted her of murder as alleged in the indictment.[1]  Appellant raises eight issues on appeal.

DENIAL OF CONFRONTATION

In her first two issues,
Appellant alleges that the admission of evidence violated her right of
confrontation guaranteed by the Sixth Amendment and Article I, Section 10 of
the Texas Constitution.  Appellant has
not shown that Article I, Section 10 provides greater protection than the Sixth
Amendment.  Therefore, we will not review
Appellant’s claim of state constitutional error and will restrict our analysis
to the Sixth Amendment.  See Lagrone v. State, 942 S.W.2d 602,
612 (Tex.Crim.App. 1997)(declining to address claim of state constitutional
error where the appellant failed to show that the Texas Constitution provides
greater protection than the Fifth Amendment). 


Applicable Law and Standard of Review

            The Sixth Amendment’s Confrontation
Clause provides that an accused has the right, in all criminal prosecutions, to
be confronted with the witnesses against him. 
U.S.Const. Amend. VI.  In accordance with this right, the
admission of out-of-court statements offered against the accused that are
“testimonial” in nature are objectionable unless the prosecution can show that
the out-of-court declarant is presently unavailable to testify in court and the
accused had a prior opportunity to cross-examine him.  Crawford
v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177
(2004); Langham v. State, 305 S.W.3d
568, 575 (Tex.Crim.App. 2010); King v.
State, 189 S.W.3d 347, 358 (Tex.App.--Fort Worth 2006, no pet.).  The United States Supreme Court has
identified three kinds of out-of-court statements that could be regarded as
testimonial:

(1)  
 ex parte
in-court testimony or its functional equivalent--that is, materials such as
affidavits, custodial examinations, prior testimony that the accused was unable
to cross-examine, or similar pre-trial statements that declarants would
reasonably expect to be used prosecutorially;

 

(2)  
extrajudicial statements contained in formalized
testimonial materials, such as affidavits, depositions, prior testimony, or
confessions; and

 

(3)  
 statements that were made under circumstances
which would lead an objective witness reasonably to believe that the statement
would be available for use at a later trial.

 

Langham, 305 S.W.3d at 576; Wall v. State, 184 S.W.3d 730, 734-35
(Tex.Crim.App. 2006), quoting Crawford,
541 U.S. at 51-52, 124 S.Ct. at 1364.

Generally,
we review a trial court’s decision on the admission of evidence for an abuse of
discretion.  Miller v. State, 36 S.W.3d 503, 507 (Tex.Crim.App. 2001).  Whether a particular out-of-court statement is
testimonial is a question of law.  Langham, 305 S.W.3d at 576.  Consequently, we will defer to the trial
court’s resolution of credibility issues and historical facts, but we will review
de novo the ultimate constitutional
question of whether the facts as determined by the trial court establish that
an out-of-court statement is testimonial. 
Id.

George Malone’s Out-of-Court Statement

In her first issue,
Appellant contends that the admission of George’s application for a protective
order violated her right of confrontation.  The trial court admitted into evidence, over Appellant’s objection based
on the Confrontation Clause, George Malone’s application for a protective order
(State’s Exhibit 64) which stated as follows:

            George Malone, Applicant, asks for a
protective order and would show the Court the following:

 

            Applicant lives at 7912 River Run,
Granbury, Texas 76049.

            Deborah Ann Malone lives in River
Run, Granbury, Texas, on a street with no address, across the street from 7912
River Run where she can be served with citation.

 

            David Lee Malone lives in River Run,
address 7908 River Run, Granbury, Texas, where he can be served with citation.

 

            David Lee Malone and Deborah Ann
Malone are children of George Malone. 
George Malone gave them the property next door to him to build their
homes on, and they both live next door to him.

 

            Every few days, Deborah Ann Malone
and David Lee Malone come to the home of George Malone, drinking, and causing
trouble, and they take things from his property.  Applicant seeks a protective order keeping
them away from the property, and away from him.

 

            Most recently, on August 6, 2009,
George Malone was mowing a lot in River Run. 
Deborah Ann Malone came close to George Malone, holding a long neck beer
bottle, yelling at George Malone something he could not understand.  Later in the day, she came to the property
next door to him and started breaking limbs off of a pecan tree.  She drove her car from her house to the
trailer next to George Malone’s house, driving back and forth, driving real
slow.  George Malone called the sheriff’s
department, but they could not get her to come to the door.  As soon as the deputy left, Deborah Ann
Malone came back out of her house.

 

            David Lee Malone was with Deborah
Ann Malone some of the time on August 6, 2009, yelling, trying to get George
Malone to respond.  George Malone would
not get off of his lawn mower, and refused to confront him.

 

            Today, as George Malone left his
home to come to apply for this protective order, Deborah Ann Malone was sitting
out in her yard, and she made obscene gestures toward him as he drove away.

 

            Wherefore, premises considered,
George Malone requests that the Court order Deborah Ann Malone and David Lee
Malone to appear and answer, and that upon hearing the Court make orders
preventing them from:

 

            Committing family violence;

 

            Communicating in a threatening or
harassing manner with George Malone;

 

            Engaging in conduct directed toward
George Malone that is reasonably likely to harass, annoy, alarm, abuse,
torment, or embarrass him.  

 

The application
is signed by George’s attorney, Andrew Ottaway, and the statements of fact
contained within the application are sworn to by George.  A process server, Randy Jaquess, served the
application on Appellant and David on August 14, 2009.  When the application was admitted, the trial
court, at the State’s request, instructed the jury that the application was not
introduced to prove the truth of the matter asserted in that document but to
show the state of mind of Appellant and her brother, David.

We
do not understand Appellant to argue that the trial court erred by admitting
any evidence that George had filed an application for a protective order, but
rather, she complains about the allegations of fact contained within that
application.  The application, State’s Exhibit
64, contains numerous allegations of fact verified by George.  While Appellant objected to the introduction
of State’s Exhibit 64, she did not continuously object each time the State
offered evidence establishing at least some of the same facts contained within
the application.  To preserve error, a
party must continue to object each time inadmissible evidence is offered or
obtain a running objection.  Lane v. State, 151 S.W.3d 188, 193
(Tex.Crim.App. 2004).  Error in the
admission of evidence is cured where the same evidence comes in elsewhere
without objection.  Id. 

The
State introduced other evidence establishing that George gave Appellant and
David the property on which they lived and the relationship of the parties.  Andrew Ottaway testified regarding the
volatile nature of the family relationship and the ongoing dispute between
George and Appellant which preceded George’s murder.  Ottaway also testified about filing the
application for a protective order and what George wanted to achieve by filing
it, namely, for Appellant and David to leave him alone.  A neighbor, Tyler Dempsey, testified that he
had observed Appellant giving George “the finger” and directing inappropriate
language toward him.  We conclude that
Appellant failed to preserve her complaint regarding the admission of the
portions of State’s Exhibit 64 regarding these facts.  Appellant did preserve her complaint
regarding the portion of State’s Exhibit 64 setting forth her specific conduct
committed on August 6, 2009, namely, she yelled at George while holding a beer
bottle, broke limbs off of a pecan tree, and drove slowly back and forth in
front of his property.  We conclude that this
portion of the application is testimonial under Crawford because it is the functional equivalent of in-court
testimony that a declarant would reasonably expect to be used in the
prosecution of a request for a protective order.  This does not end our inquiry because the Supreme
Court noted in Crawford that the
Confrontation Clause does not bar the use of testimonial statements offered for
purposes other than establishing the truth of the matter asserted.  Crawford,
541 U.S. at 59 n.9, 124 S.Ct.  at 1369, citing Tennessee v. Street, 471 U.S.
409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).  When the relevance of an out-of-court
statement derives solely from the fact that it was made, and not from the
content of the assertion it contains, there is no constitutional imperative
that the accused be permitted to confront the declarant.  Langham,
305 S.W.3d at 576.  

The
State argues on appeal, as it did in the trial court, that it did not offer the
application to prove the truth of the factual allegations contained therein but
to show that Appellant had notice that her father did not want her on his
property, he did not want her to threaten him, and he did not want her to
commit acts of family violence against him. 
Under this theory, the relevance of State’s Exhibit 64 derives solely
from the fact that George filed the application containing these allegations
and a process server served the application on Appellant.  Stated differently, the State did not offer State’s
Exhibit 64 to prove that Appellant yelled at George while holding a beer
bottle, broke limbs off a pecan tree, or drove slowly in front of his
property.  We conclude that the admission
of this exhibit did not violate Appellant’s right of confrontation.

Even
if the trial court erred, we would be required to determine whether the error
is harmless under the standard for constitutional error in Tex.R.App.P. 44.2(a).  Under that standard, we are required to
reverse a judgment of conviction or punishment unless the court determines
beyond a reasonable doubt that the error did not contribute to the conviction
or punishment.  See Tex.R.App.P.
44.2(a).  The evidence at trial
established that the family members had a volatile relationship and there had
been an ongoing dispute between Appellant and her father over who should
control Danny’s finances.  There is also
evidence that George filed an application for a protective order against
Appellant and David in early August 2009. 
George’s attorney attempted to secure an agreed mutual protective order
by discussing the matter with Appellant and David because he saw that the
problem was escalating.  A few weeks
after the protective order application was served on Appellant, she spoke with
one of her brothers about her dispute with their father and told him that
George just needed to die.   The factual
statements contained within the application depict Appellant’s animosity
towards her father and her harassment of him but there is other evidence in the
record establishing that this was the nature of the relationship.  Given this evidence in the record, we find
beyond a reasonable doubt that the admission of State’s Exhibit 64 did not
contribute to Appellant’s conviction or punishment.  We overrule Issue One.

George’s Statement to Mary Gerdes

            In Issue Two, Appellant argues that
the trial court abused its discretion by admitting the testimony of Mary
Gerdes.  On September 28, 2009, Gerdes
was working as a volunteer with Pecan Planation EMS.  Gerdes had been an EMT for six years but she
had become an “intermediate” after receiving additional training.  She and her partner were dispatched to the
scene of the assault involving George Malone. 
They arrived after the scene had been secured and she began taking a
medical history from George.  When she
asked George what was wrong with him, he said “She bit me, and he kicked
me.”  The trial court overruled
Appellant’s hearsay and confrontation objections.  Gerdes identified Appellant as the only
female present at the scene.  

In
Issue One, we focused the analysis on the first category of testimonial
evidence, but this issue is related to the third category:  statements that were made under circumstances
which would lead an objective witness reasonably to believe that the statement
would be available for use at a later trial. 
George’s statement to Gerdes regarding the origin of his injuries was
not testimonial for purposes of the Confrontation Clause and Crawford.  See Malone,
2011 WL 5118820 at *3.  The primary
purpose of this statement was not to provide testimony or develop facts for
later litigation but to provide information to medical personnel about the
nature of the injuries.  See id. 
Viewed objectively, George’s statement to the EMT was made to enable
assistance to meet an ongoing medical emergency and not to establish or to
prove past events potentially relevant to later criminal prosecutions.  Id.,
citing Davis v. Washington, 547 U.S.
813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).  The trial court did not abuse its discretion
by overruling Appellant’s objection based on the Confrontation Clause.  Issue Two is overruled.

ADMISSION OF AUTOPSY PHOTOGRAPH

In
Issue Three, Appellant argues that the trial court abused its discretion by
admitting State’s Exhibit 60, a photograph of the victim’s brain taken during
the autopsy, because the probative value of the evidence is substantially
outweighed by the danger of unfair prejudice. 
Relevant evidence is generally admissible, but it is properly excluded
under Rule 403[2]
when its probative value is substantially outweighed by the danger of unfair
prejudice.  Tex.R.Evid. 403; Casey
v. State, 215 S.W.3d 870, 879 (Tex.Crim.App. 2007).  In keeping with the presumption of
admissibility of relevant evidence, trial courts should favor admission in
close cases.  Casey, 215 S.W.3d at 879; Montgomery
v. State, 810 S.W.2d 372, 389 (Tex.Crim.App. 1991)(op. on reh’g).  

The
term “probative value” refers to the inherent probative force of an item of evidence
--that is, how strongly it serves to make more or less probable the existence
of a fact of consequence to the litigation -- coupled with the proponent’s need
for that item of evidence.  Casey, 215 S.W.3d at 879; Gigliobianco v. State, 210 S.W.3d 637,
641 (Tex.Crim.App. 2006).  When
conducting the balancing test under Rule 403, the trial court determines
whether the probative value of the evidence is substantially outweighed by one
of the following countervailing considerations listed in the rule.  Casey,
215 S.W.3d at 879.  A trial court must
balance (1) the inherent probative force of the proffered item of evidence
along with (2) the proponent’s need for that evidence against (3) any tendency
of the evidence to suggest decision on an improper basis, (4) any tendency of
the evidence to confuse or distract the jury from the main issues, (5) any
tendency of the evidence to be given undue weight by a jury that has not been
equipped to evaluate the probative force of the evidence, and (6) the likelihood
that presentation of the evidence will consume an inordinate amount of time or
repeat evidence already admitted.  Gigliobianco, 210 S.W.3d at 641-42.  

Relevant
factors in determining whether the probative value of photographs is
substantially outweighed by the danger of unfair prejudice include the number
of exhibits offered, their gruesomeness, their detail, their size, whether they
are in color or black-and-white, whether they are close-up, whether the body
depicted is clothed or naked, the availability of other means of proof, and
other circumstances unique to the individual case.  Williams
v. State, 301 S.W.3d 675, 690 (Tex.Crim.App. 2009).  Autopsy photographs are generally admissible
unless they depict mutilation of the victim caused by the autopsy itself.  Id.  The admissibility of photographs over an
objection is within the sound discretion of the trial court.  Davis
v. State, 313 S.W.3d 317, 331 (Tex.Crim.App. 2010).  Consequently, the trial court’s ruling on the
admissibility of photographs is reviewed under an abuse of discretion standard
and will not be disturbed on appeal unless it falls outside the zone of
reasonable disagreement.  Young v. State, 283 S.W.3d 854, 874
(Tex.Crim.App. 2009).

            Dr. Shiping Bao, the Tarrant County
Deputy Medical Examiner, testified regarding the autopsy of the victim.  State’s Exhibit 60 is a photograph of the
victim’s brain after it was removed from the body.  It depicts a large 2.5 inch by 2.5 inch hemorrhage
on the left occipital lobe which caused a midline shift of the brain and resulted
in the victim’s death.  Dr. Bao explained
that the injury was caused by blunt force trauma to the victim’s head.  Exhibit 60 is the only photograph from the
autopsy offered into evidence by the State. 
It has substantial probative value because it depicted the fatal injury to
the brain sustained during the assault as the result of blunt force trauma to
the head.  Thus, the photograph assisted
the jury in understanding the nature of the injury and the cause of death.  It is not excessively gruesome and there is
nothing to indicate that the jury would have given it undue weight.  Likewise, the evidence would not have caused
the jury to make its decision on an improper basis.  We conclude that the trial court did not
abuse its discretion by overruling Appellant’s Rule 403 objection and admitting
the autopsy photograph.  See Davis, 313 S.W.3d at 331 (trial
court did not abuse discretion by overruling Rule 403 objection and admitting
autopsy photograph depicting cross-section of victim’s tongue; photograph was
not excessively gruesome and was necessary to show an injury not otherwise
visible).  We overrule Issue Three.

LESSER-INCLUDED OFFENSES

            In Issue Four, Appellant contends
that the trial court erred by failing to instruct the jury on the
lesser-included offenses of criminally negligent homicide, manslaughter, and
aggravated assault.  She admits that she did
not request that the trial court include instructions on any of these lesser-included
offenses in the charge, but she argues, in effect, that the trial court had a sua sponte duty to do so and the absence
of these instructions caused egregious harm. 


The
trial judge has a duty to prepare a jury charge that accurately sets out the
law applicable to the specific offense charged. 
Tex.Code Crim.Proc.Ann. Art.
36.14 (West 2007); Delgado v. State,
235 S.W.3d 244, 249 (Tex.Crim.App. 2007). 
The judge does not have a sua
sponte duty to instruct the jury on lesser-included offenses.  Tolbert
v. State, 306 S.W.3d 776, 780 (Tex.Crim.App. 2010); Delgado, 235 S.W.3d at 249.  
Because Appellant did not request these instructions, the trial court
did not err by failing to include them in the charge.  In the absence of error in the charge, we do
not review the charge for egregious harm under Almanza.[3]  Tolbert,
306 S.W.3d at 782; Posey v. State,
966 S.W.2d 57, 61 (Tex.Crim.App. 1998).  Issue
Four is overruled.

SUDDEN PASSION

            In Issue Five, Appellant asserts
that she suffered egregious harm from the trial court’s failure to instruct the
jury on the issue of sudden passion in the punishment charge.  Appellant admits that she never requested
that an instruction on sudden passion and the record reflects that she did not
object to the punishment charge.  

At
the punishment stage of a murder trial, the defendant may raise the issue of
whether he caused the death under the immediate influence of sudden passion
arising from an adequate cause.  Tex.Penal Code Ann. § 19.02(d)(West 2011);
Swaim v. State, 306 S.W.3d 323, 324
(Tex.App.--Fort Worth 2009, pet. ref’d).  If the defendant proves the issue in the
affirmative by a preponderance of the evidence, the offense is a felony of the
second degree.  Tex.Penal Code Ann. § 19.02(d); Swaim, 306 S.W.3d at 324. 
The trial court is not required to instruct the jury on the issue of
sudden passion in the absence of a request by the defendant.   Swaim,
306 S.W.3d at 324.  Issue Five is
overruled.

CONCURRENT CAUSATION

            In Issue Six, Appellant argues that
the trial court erred by failing to instruct the jury on the issue of concurrent
causation.  She concedes that she did not
request an instruction on concurrent causation. 
Section 6.04(a) of the Texas Penal Code provides that:  “A person is criminally responsible if the
result would not have occurred but for his conduct, operating either alone or
concurrently with another cause, unless the concurrent cause was clearly
sufficient to produce the result and the conduct of the actor clearly
insufficient.”  Tex.Penal Code Ann. § 6.04(a)(West 2011).  The Fort Worth Court of Appeals has held that
concurrent causation is a defensive issue. 
Oberlander v. State, No. 02-09-00395-CR,
2011 WL 1833097 at *3 (Tex.App.--Fort Worth 2011, pet. ref’d).  An unrequested defensive issue is not the law
applicable to the case.  Id. 
A trial judge does not have a sua
sponte duty instruct the jury on a defensive issue.  Delgado,
235 S.W.3d at 249.  In the absence of a
request by Appellant for this instruction, the trial court did not err by
failing to include it in the court’s charge. 
Issue Six is overruled.

MANNER AND MEANS UNKNOWN

            In her seventh issue, Appellant
contends that the trial court erred by including in the jury charge an
instruction which permitted the jury to find Appellant guilty under the third
paragraph of Count I because the trial court failed to conduct a hearing to
determine if the manner and means were still unknown.  In support of this argument, she cites a
decision of the Court of Criminal Appeals which was withdrawn since Appellant
filed her brief.  Sanchez v. State, No. PD-0961-07, 2010 WL 3894640 (Tex.Crim.App.
Oct. 6, 2010).  As this withdrawn
decision was the sole support for this part of her argument, we will not
address it.

Standard of Review

In
reviewing charge error, we must first determine whether error exists.  Druery
v. State, 225 S.W.3d 491, 504 (Tex.Crim.App. 2007).  If we find error, we must then determine
whether the error caused sufficient harm to require reversal.  Id.  The standard of review differs depending on
whether the defendant made a timely objection at trial.  See Bluitt
v. State, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004).  If the error was the subject of a timely
objection, reversal is required if there is some harm to the defendant as a
result of the error.  See Tex.Code
Crim.Proc.Ann. art. 36.19 (West 2006); Ovalle v. State, 13 S.W.3d 774, 786 (Tex.Crim.App. 2000); Almanza v. State, 686 S.W.2d 157, 171
(Tex.Crim.App. 1985)(op. on reh’g).  If
no proper objection was made at trial, reversal is required only if the error
is so egregious that the defendant was denied a fair and impartial trial.  See Ovalle,
13 S.W.3d at 786; Almanza, 686 S.W.2d
at 171.  

Error in the Charge

Consistent
with the indictment, the charge permitted the jury to find Appellant guilty of
murder if it found beyond a reasonable doubt that she, either acting alone or
with David Lee Malone as a party to the offense:

1.     
intentionally or knowingly caused the death of
George Earl Malone by kicking and striking George Earl Malone in the head;

 

2.     
intentionally, with intent to cause serious
bodily injury to George Earl Malone, committed an act clearly dangerous to
human life, namely kicking and striking George Earl Malone in the head, which
caused the death of George Earl Malone; or

 

3.     
intentionally, with intent to cause serious bodily
injury to George Earl Malone, committed an act clearly dangerous to human life,
by manner and means unknown to the Grand Jury, which caused the death of George
Earl Malone.[4]


 

The trial court is required to provide the
jury with a written charge setting forth the law applicable to the case.  Tex.Code
Crim. Proc.Ann. art. 36.14.  The court’s
instructions must “apply the law to the facts adduced at trial.”  Sanchez
v. State, 376 S.W.3d 767, 773 (Tex.Crim.App. 2012).  As a general rule, the instructions must also
conform to allegations in the indictment.  Id.

            The
term “manner and means” refers to the actus reus of the crime.  Id.,
citing Jefferson v. State, 189 S.W.3d 305, 316 (Tex.Crim.App. 2006)(Cochran,
J., concurring)(noting that manner and means is a “description of how the
offense was committed.”).  The means of
death may refer to the weapon or instrument responsible for the deceased’s
death.  Sanchez, 376 S.W.3d at 773.  Neither
the manner nor the means need to be agreed upon unanimously by a jury.  Id.
at 773-74.  The jury is only required to
unanimously agree that the defendant caused the death of the complainant.  Id.
at 774.

            Dr.
Shiping Bao testified that the medical cause of death was the subdural
hematoma, or blood clot, between the brain and skull.  He determined that the cause of death was
blunt force head injuries and the manner of death was homicide.  Dr. Bao found at least five blunt force
impacts to the victim’s head but it was his opinion that the blow to the right
orbit caused the left occipital lobe hemorrhage.  Dr. Bao explained that the blow to the right
orbit would cause the brain to move inside of the skull and strike the opposite
side of the skull thereby causing the injury to the left occipital lobe.  There is evidence in the record that David
Malone kicked George in the head and also punched his head while Appellant was
restraining George.  The record does not
contain any evidence that the victim’s brain injury and resulting death was
caused by unknown manner and means. 
Thus, the trial court erred by submitting the third alternative to the
jury.  See Sanchez, 376 S.W.3d at 774.

Harm Analysis

Appellant
failed to object to the inclusion of this third alternative theory in the
application paragraph.  Consequently, the
jury charge error requires reversal only if the error caused egregious harm.  Errors that result in egregious harm are those
that affect the very basis of the case, deprive the defendant of a valuable
right, or vitally affect a defensive theory.  See
Almanza, 686 S.W.2d at 172.  The
degree of harm is determined in light of the entire jury charge, the state of
the evidence, including the contested issues and weight of probative evidence,
the argument of counsel and any other relevant information revealed by the
record of the trial as a whole.  Sanchez, 376 S.W.3d at 774-75.  In a jury charge alleging alternative
theories, harm must be measured “at least in part, against the likelihood that
the jury’s verdict was actually based upon an alternative available theory of
culpability not affected by erroneous portions of the charge.”  Sanchez,
376 S.W.3d at 775, quoting Atkinson v.
State, 923 S.W.2d 21, 27 (Tex.Crim.App. 1996), overruled on other grounds by Motilla v. State, 78 S.W.3d 352
(Tex.Crim.App. 2002).  When a jury
returns a general guilty verdict on an indictment charging alternate methods of
committing the same offense, the verdict stands if the evidence is sufficient
to support a finding under any of the theories submitted.  Sanchez,
376 S.W.3d at 775.  The presence of
overwhelming evidence of guilt plays a determinative role in resolving the
issue and may be considered when assessing jury-charge error.  Id.

Having
considered the entire record, we find that the erroneous jury charge did not
result in egregious harm.  The jury
charge permitted the jury to convict Appellant either acting alone or as a
party with David Malone under two other theories both of which are supported by
the evidence.  Issue Seven is overruled.

LAW OF PARTIES

            In Issue Eight, Appellant complains
that the trial court erred by instructing the jury on the law of parties
because it was not raised by the evidence.[5]  A person is criminally responsible as a party
to an offense if the offense is committed by her own conduct, by the conduct of
another for which she is criminally responsible, or by both.  Tex.Penal
Code Ann. § 7.01(a).  A person is
criminally responsible as a party to an offense committed by the conduct of
another if the person acts with an intent to promote or assist in the
commission of the offense, and solicits, encourages, directs, aids, or attempts
to aid another person to commit the offense.  Tex.Penal
Code Ann. § 7.02(a)(2).  In
determining whether a defendant is a party to an offense, the court may examine
the events occurring before, during, or after the offense is committed and may
rely on the defendant’s actions showing an understanding and common design to
commit the offense.  See Marable v. State, 85 S.W.3d 287, 293 (Tex.Crim.App. 2002). An
instruction on the law of parties may be given whenever there is sufficient
evidence to support a jury verdict that the defendant is criminally responsible
under the law of parties.  Ladd v. State, 3 S.W.3d 547, 564
(Tex.Crim.App. 1999). 

            The trial court’s charge instructed
the jury that a person is criminally responsible for an offense committed by
the conduct of another if, acting with intent to promote or assist the
commission of the offense, she solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense.  See Tex.Penal Code Ann. § 7.02(a)(2). The
charge also instructed the jury that mere presence at the scene of an offense
will not make a person a party to an offense.  Applying the law of parties to the offense of
murder under Section 19.02(b)(1) and to the evidence as it relates to Paragraph
1 of Count I, Appellant is criminally responsible as a party to this offense
if, acting with the intent to promote or assist in the commission of the murder
of George Malone by David Lee Malone, Appellant solicited, encouraged,
directed, aided, or attempted to aid David Malone to commit the murder, and
David Lee Malone, intentionally or knowingly caused George Malone’s death by
kicking and striking him in the head.  Similarly,
Appellant is criminally responsible as a party to the offense of murder alleged
in Paragraph 2 of Count I, if Appellant, acting with the intent to promote or
assist in the commission of the murder of George Malone by David Lee Malone, Appellant
solicited, encouraged, directed, aided, or attempted to aid David Malone to
commit the murder, and David Lee Malone, acting with intent to cause serious
bodily injury, committed an act clearly dangerous to human life by kicking and
striking George Malone in the head which caused the death of George Malone.

            It is undisputed that Appellant had
a difficult relationship with her father during the weeks and months leading up
to the offense.  During the summer of
2009, George sought a protective order against Appellant and David.  Just a few weeks before the offense, Appellant
spoke with her brother, Yates Malone, about her ongoing dispute with George and
she said that her father needed to die. 
Witnesses observed Appellant holding George during the assault while
David viciously kicked him in the head and punched his head.  Appellant continued to hold George even after
his body went limp and David kicked him a second time in the head.  Appellant did not merely hold George while
David kicked him; she also bit George and gouged him with her fingernails.  After neighbors intervened, Appellant
repeatedly stated that she had beaten her father and she hoped he died.  All of this evidence showed that Appellant
acted with intent to promote or assist the commission of the offense and she aided
or attempted to aid David Malone in the commission of murder as alleged in
Paragraphs 1 and 2 of Count I.  The trial
court did not err by applying the law of parties to either paragraph.  Issue Eight is overruled.   Having overruled each issue, we affirm the
judgment of the trial court. 

 

February 6, 2013                                 _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

Antcliff, J., not participating

 

(Do Not Publish) 

 











[1]  A jury also convicted David Malone of George
Malone’s murder and the Second Court of Appeals affirmed that conviction.  Malone
v. State, Cause No. 02-10-00436-CR, 2011 WL 5118820 (Tex.App.--Fort Worth
Oct. 27, 2011, no pet.).  





[2]  Rule 403
provides that relevant evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.  Tex.R.Evid. 403.

 





[3]  Almanza
v. State, 686 S.W.2d 157 (Tex.Crim.App. 1984).





[4]  Paragraph
Three of the indictment alleged as follows: 
“[A]nd it is further presented in and to said Court that the said
DEBORAH MALONE WILSON, Defendant, in the County of Hood and State aforesaid, on
or about the 28th day of September, 2009, did then and there intentionally,
with intent to cause serious bodily injury to George Earl Malone, commit an act
clearly dangerous to human life, by manner and means unknown to the Grand Jury,
which caused the death of George Earl Malone.”

 





[5]  Appellant has not raised an issue on appeal
that the evidence is legally insufficient to support her conviction.  We have not interpreted Issue Eight as
raising such an argument because the only relief she seeks is reversal of her
conviction and remand for a new trial.